**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| ADAM KORNGOLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Civil Action No. 1:22-CV-10864-AK |
| v. ) | |
| ) | |
| DRB SYSTEMS LLC, ) | |
| JAMES DANIEL PITTMAN, ) | |
| KENNETH BUNNEY, ) | |
| IAN WILLIAMS, ) | |
| and JEFFERY DARRAH, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER ON DEFENDANTS WILLIAMS AND DARRAH'S**
**MOTION TO DISMISS**

**A. KELLEY, D.J.**

Plaintiff Adam Korngold brings the instant suit against Defendants DRB Systems, LLC

("DRB"), James Daniel Pittman, Kenneth Bunney, Ian Williams, and Jeffrey Darrah. [See Dkt.

1 ("Compl.")]. Korngold places liability on Williams and Darrah (collectively "Defendants") in

particular for their assumption of the roles of President, Chief Executive Officer ("CEO"), and

Chief Financial Officer ("CFO") respectively after his employment was terminated. [Id. at ¶¶ 5-

6]. Korngold alleges that these two Defendants violated the Massachusetts Wage Act ("the

Wage Act") pursuant to Mass. Gen. Laws Chapter 149 Section 148 (Counts V, VI, and VII)

because Defendants were officers of DRB who had the power to pay Korngold's incentive-based

wages and did not immediately provide payment for his accrued vacation days or his final

paycheck. [Id. at ¶ 65-81]. Furthermore, Korngold claims these Defendants retaliated against

him after he asserted his right to payment of his wages, in violation of the Wage Act pursuant to

Mass. Gen. Laws Chapter 149 Section 148A (Count VIII).  [Id. at ¶ 83].  Defendants filed a

motion to dismiss the case for failure to state a claim upon which relief can be granted and for

lack of personal jurisdiction, [Dkt. 14], which Korngold opposes, [Dkt. 20].

Since the Court is unable to exercise personal jurisdiction as per the reasons set forth

below, Defendants Williams and Darrah's motion to dismiss [Dkt. 14] is **GRANTED**.

## I.    BACKGROUND

The following facts are drawn from the Complaint.  [Compl.]  In 2011, Korngold

founded Washify with the aim of developing new software and hardware solutions to assist car

wash owners in attracting customers and increasing profitability.  [Compl. at ¶ 12].   In early

2021, Korngold sold Washify to DRB, a limited liability company organized under Ohio with its

principal place of business in Ohio.  [Id. at ¶¶ 2, 13-14].  Both, Korngold and DRB, entered into

an employment agreement that allowed Korngold to become President of DRB's Washify

business unit and earn incentive compensation, totaling at least $2,500,000, upon achieving

certain revenue and retention targets.  [Id. at ¶ 15].  At this time, Pittman, a resident of Ohio, was

President and CEO of DRB until May 2022, and Bunney, a resident of Ohio, was CFO of DRB

until April 2022.  [Id. at ¶¶ 3-4].

The employment agreement provided Korngold additional wages of $1,250,000 if his

efforts led Washify to achieve at least $14,750,000 in gross revenue between the acquisition and

end of 2021, and another $1,250,000 if he remained under DRB employment on March 31, 2022.

[Id. at ¶¶ 16-17].  If DRB terminated Korngold's employment for any reason other than "cause"

prior to March 31, 2022, he was entitled to the retention bonus.  [Id. at ¶ 18].  "Cause" was

defined as the failure to perform his duties, the failure to comply with valid and legal directives

from DRB; or engagement in dishonesty, illegal conduct, or gross misconduct.  [Id. at ¶ 19].

The employment agreement further stated DRB had discretion to provide Korngold fifteen business days, from the delivery of written notice, to cure any acts constituting "cause." [Id. at ¶ 20]. DRB, however, was not to interfere with his ability to cause Washify to conduct business in the ordinary course. [Id. at ¶ 21]. Korngold alleges DRB breached the employment agreement by making significant personnel cuts without consulting him and reducing his authority in product development, operations, and human resources. [Id. at ¶¶ 24-25]. Despite these challenges, he exceeded the incentive payment target. [Id. at ¶¶ 26-27].

In July 2021, Vontier Corporation, a sole member of DRB and a publicly traded corporation organized under Delaware law with its principal place of business in North Carolina, acquired Washify and continued to diminish the unit. [Id. at ¶¶ 2, 29]. On September 20, 2021, Korngold sent a written complaint to Pittman and Bunney about the contractual breaches that provided him the right to resign his employment for "good reason" and trigger his rights to $2,500,000 but emphasized that he did not want to leave. [Id. at ¶¶ 30-31]. Thereafter, Korngold was placed on administrative leave on November 8, 2021, due to "serious compliance concerns related to Washify," and DRB began to conduct an investigation. [Id. at ¶¶ 33-35]. Korngold was not permitted to communicate with staff, enter the Washify premises, or partake in the investigation. [Id. at 33-34]. On December 17, 2021, DRB terminated Korngold for "cause." [Id. at ¶¶ 38]. After that, Defendant Williams, a resident of Minnesota, became the President and CEO following Pittman in May 2022. [Id. at ¶¶ 3, 5]. Defendant Durrah, a resident of Ohio, became CFO following Bunney in April 2022. [Id. at ¶¶ 4, 6].

Korngold claims DRB must pay the $1,250,000 of incentive-based wages and should be held liable for failure to immediately provide payment of his accrued vacation and final paycheck. [Id. at ¶¶ 43-44, 73-74, 78]. In addition, he asserts that DRB violated the Wage Act

by retaliating against him for asserting his rights on September 20, 2021.   [Id. at ¶¶ 82-84].

Korngold further claims both Williams and Darrah are individually liable because they are

officers in management roles of DRB who had a substantial role in determining DRB's financial

policy to pay Korngold his wages.  [Id. at ¶ 67].

On June 3, 2022, Korngold filed the complaint at issue in the District of Massachusetts

under diversity jurisdiction.  [Id. at ¶¶ 7-8].  He alleges Defendants are liable for automatic treble

damages, costs and attorneys' fees in violation of the Wage Act.  [Id. at ¶¶ 70, 76, 81, 84].

Defendants moved to dismiss the complaint for lack of personal jurisdiction pursuant to Federal

Rule of Civil Procedure 12(b)(2) and failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6). [1]  [Dkt. 14; see Dkt. 15 at 1].

## II.     LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction, brought pursuant to Federal Rule of

Civil Procedure 12(b)(2), challenges the ability of the court to assert judicial power over the

defendant.  When personal jurisdiction is contested, the plaintiff has the "ultimate burden of

showing by a preponderance of the evidence that jurisdiction exists."  Vapotherm, Inc. v.

Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir.

2010)).  To demonstrate this, the plaintiff should "proffer evidence which, taken at face value,

suffices to show all facts essential to personal jurisdiction."  Baskin-Robbins Franchising LLC v.

Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  The court reviews the pleadings,

supplemental filings in the record, undisputed facts provided by the defendant, giving credence

to plaintiff's version of genuinely contested facts.  Id.  The plaintiff's burden of proof is "light"

but nevertheless requires plaintiff to rely not on "mere allegations" alone but to point to specific

---

[1] Since the Court finds that it lacks personal jurisdiction over Defendants, it will not address the parties' other arguments on dismissing the case for failure to state a claim.

facts in the record that support their claims.  Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002.  The court "'must accept the plaintiff's (properly documented) evidentiary proffers as true'…irrespective of whether the defendant disputes them" for the purposes of the motion.  Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

## III.    DISCUSSION

Korngold argues that the Court may exercise personal jurisdiction over Williams and Darrah due to their roles as President/CEO and CFO of DRB because DRB's acquired Washify a subsidiary that is incorporated in Massachusetts.  [Dkt. 20 at 7-8].  For a court to exercise personal jurisdiction over a defendant, it must find "sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause."  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  Massachusetts' long-arm statute identifies causing tortious injury by act or omission in the Commonwealth as a sufficient rationale for extending personal jurisdiction over a defendant.  Mass. Gen. Laws ch. 223A, § 3.  The long-arm statute is coextensive to the limits required by due process under the Constitution.  Adelson, 510 F.3d at 49 ("In Massachusetts, the Court can 'sidestep the statutory inquiry and proceed directly to the constitutional analysis.'" (quoting Daynard, 290 F.3d at 52)). Therefore, the focus of this inquiry is whether the exercise of jurisdiction would be consistent with the Fourteenth Amendment's Due Process clause.

To meet the requirements of the Due Process Clause of the Fourteenth Amendment, the defendant must "have certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v.

Washington, 326 U.S. 310, 316 (1945) (quoting Miliken v. Meyer, 311 U.S. 457, 463 (1940)).  A federal court may exercise general or specific jurisdiction over a defendant. See Chen, 956 F.3d at 55.  A defendant is subject to a court's general jurisdiction when they are "essentially at home in the forum." Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014).  In contrast, specific jurisdiction is exercised when "that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum."  See Chen, 956 F.3d at 55 (quoting Baskin-Robbins, 825 F.3d at 35).

### A.  General Jurisdiction

The Court cannot exercise general jurisdiction over the Defendants here who are domiciled outside of this state.[2]  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  Daimler AG, 571 U.S. at 137 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)).  "A court may also assert general jurisdiction over an individual when the individual explicitly consents or is physically present in the forum state when served."  Doe v. JetBlue Airways Corp., No. 20-cv-11623, 2021 WL 3375107, at *6 (D. Mass. Aug. 3, 2021).  Here, Williams is a resident of Minnesota and Darrah is a resident of Ohio.  [Compl. at ¶¶ 5-6].  Korngold does not allege Defendants are domiciled in Massachusetts or that they consented to jurisdiction.  [See. Compl.].  Nor does he provide any facts to show Defendants were physically present in Massachusetts when served.  [See Compl.].  Instead, Defendants alleged contacts are merely that they "controlled, directed, and participated in a substantial degree in determining and controlling DRB's financial policy" and "had the power to pay Mr. Korngold's wages" after he was terminated.  [Compl. at ¶ 67].  Controlling, directing, or participating in a financial policy with

---

[2] Defendant raised the issue of general jurisdiction [Dkt. 15 at 10-11], but Plaintiff did not address the issue in their opposition [Dkt. 20].

the ability to pay an employee is merely a "slim contact" which does not amount to an "individual's domicile." Daimler, 571 U.S. at 136-37.  Accordingly, Korngold fails to show that Defendants' contacts with this forum are sufficient to subject Defendants to general jurisdiction in Massachusetts.

### B. Specific Jurisdiction

"In the absence of general jurisdiction, a court's power [to exercise jurisdiction] depends upon the existence of specific jurisdiction." Massachusetts Sch. of L., 142 F.3d at 34.  The First Circuit separates analysis of minimum contacts into the three categories of relatedness, purposeful availment, and reasonableness.  Adelson, 510 F.3d at 49.  Each is required to establish a finding of specific jurisdiction.  Id.

#### 1. Relatedness

First, we consider whether Korngold has offered evidence that the claims "directly arise out of or relate to the defendant's forum state activities."  Vapotherm, 38 F.4th at 258 (quoting Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018)).  The standard for relatedness is a "flexible, relaxed standard [that] focuses on the 'nexus between the defendant's contacts and the plaintiff's cause of action.'"  Adelson, 510 F.3d at 49 (citations omitted).  The First Circuit has stated that "the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case."  Phillips v. Prairie Eye Ctr. 530 F.3d 22, 27 (1st Cir. 2008) (quoting Harlow v. Child.'s Hosp., 432 F.3d 50, 61 (1st Cir. 2005)).  We consider relatedness for violation and retaliation of the Wage Act in turn.

Korngold does not provide an exact date as to when Williams became the President and CEO, except that it was after Pittman who was President and CEO until May 2022.  [Compl. at ¶¶ 3, 5].  Korngold does not provide an exact date that Darrah became CFO either except that it

was after Bunney who was CFO until April 2022.  [Id. at ¶¶ 4, 6].  Both of these appointments came after Korngold was placed on administrative leave November 8, 2021, after DRB's investigation of Washify, and after Korngold's termination.  [Id. at ¶¶ 33-34, 38].  Throughout this entire dispute, Defendants were not employed by DRB.  [See id. at ¶¶ 3-6, 33-34, 38].  Therefore, any contacts they have had with this forum subsequent to their appointment are not related to the dispute in this case.

To argue that Defendants' contacts are related to the forum here, Korngold relies on the fact that Defendants are employers within the meaning of the Wage Act and therefore had the ability to control DRB's financial policy.  [Compl. at ¶ 67; Dkt. 20 at 8-9].  By not being the President/CEO or CFO when Korngold was terminated, Defendants were not in a position to retaliate against Korngold (Count VIII) or provide immediate payment for Korngold's accrued vacation days (Count VI) and final check (Count VII).  [Id. at ¶¶ 3-4, 5, 6, 30-31, 74, 78].  Accordingly, these claims do not "directly arise out of or relate" to Defendant's actions as President/CEO and CFO because Defendants were not employed by DRB during any of the above-described disputes.

Korngold also argues that Defendants are liable for the failure to provide payment of the incentivized wages (Count V) because at the time that DRB made the determination to deprive Korngold of his wages, which gave rise to his Wage Act claim, Defendants were in their leadership positions at DRB.  [Dkt. 20 at 4].  This assertion though is not in line with the facts alleged in Korngold's complaint which does not identify any specific actions taken by Defendants to deprive Korngold of his incentivized wages.  [See Compl.].  The only time specified in the complaint for which a decision to deny Korngold his incentivized wages took place is, prior to Defendants' employment at DRB, when Korngold's termination occurred for a

"fabricated" reason so as to "deprive Mr. Korngold of the incentive payments he either had or would have earned." [Compl. at ¶ 32].

The complaint claims Defendants are liable because they were "officers and/or agents having the management of DRB who controlled, directed, and participated in a substantial degree in determining and controlling DRB's financial policy and had the power to pay Mr. Korngold his wages." [Id. at ¶ 67]. Even so, Korngold does not allege any forum-based contacts on the part of Defendants including none that would be connected to the acts that gave rise to this action. [See id.]. He alleges no instances in which he spoke directly to Williams or Darrah regarding compensation for the incentivized wages; nor does he allege any facts indicating their awareness of the failure of payment of those wages during their period of employment prior to the filing of this claim. [See id.]. Although Defendants may be aware of DRB's contacts in Massachusetts as President/CEO and CFO, Korngold does not establish a sufficient nexus between Defendants and Massachusetts. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618, 620 (1st Cir. 2001) (describing requirement of relatedness to defendant's in-forum activities focuses on the nexus between defendants' contacts and plaintiff's cause of action.)

DRB may own the Washify subsidiary in Massachusetts that is central to this litigation, but this represents the corporations' contacts with this forum, not Defendants'.

To determine whether Korngold's claim arises out of nonresident Defendants' activities in Massachusetts, the inquiry "turns on whether those actions can be said to be the legal, or proximate cause of the injuries suffered by [Korngold]." Hopkins v. Yi, No. 4:18-CV-40197-TSH, 2019 WL 3547085 at *6 (D. Mass. May 31, 2019). For the reasons stated previously, the complaint does not show any of Williams and Darrah's conduct in Massachusetts caused, or were otherwise related to Korngold's claims.

While relatedness is a "flexible, relaxed standard," even if the Court may find the claims sufficiently relate to the Defendants' activities in Massachusetts as President/CEO and CFO, the Court would not be able to exercise personal jurisdiction over Defendants because Korngold has not demonstrated purposeful availment.

## 2. Purposeful Availment

Purposeful availment examines whether a defendant's in-state contacts represent a "purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 61 (quoting Foster–Miller, Inc., 46 F.3d at 144). A defendant purposefully avails itself of a forum's laws when it has "deliberately target[ed] its behavior" toward the forum. Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 879-83 (2011)). To meet this criteria, the defendant's contacts with the forum must be able to demonstrate voluntariness and foreseeability. Vapotherm, 38 F.4th at 261. For voluntariness, those contacts "must be voluntary and not based on the unilateral actions of another party." Id. (quoting Adelson, 510 F.3d at 50). Foreseeability looks at whether a defendant's contacts in the forum state provides him notice to "reasonably anticipate being haled into court there." Id. (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Korngold is unable to establish voluntariness or foreseeability. Korngold connects the actions of DRB to Defendants even though the alleged wrongful conduct occurred months prior to them coming on board. [See Compl.]. "Purposeful availment is not shown simply by reciting [Defendants] position as [President/]CEO [and CFO] of [DRB]." Hopkins, 2019 WL 3547085 at *7; see also Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 906 (1st Cir. 1980) ("The general

rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation.")

Defendants did not deliberately target their behavior to Massachusetts by accepting employment from DRB, an Ohio based company with staff scattered across different states, nor does Korngold provide sufficient facts to show any voluntary actions taken by them to establish contacts within Massachusetts. [See Compl.]. Instead, these allegations arise from the voluntary actions of Pittman and Bunney during their time of employment as President/CEO and CFO at DRB. [See id. at ¶¶ 14-34, 38].

Even if their actions overseeing DRB's subsidiary in Massachusetts could show voluntariness, it would not be foreseeable for Defendants to be held liable for actions taken by DRB officials prior to Defendants' employment on which they did not have any input. By merely accepting a position at DRB, Defendants did not avail themselves "of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of its laws and making [their] involuntary presence before the state's courts foreseeable." Vapotherm, 38 F.4th at 262 (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

### 3. Reasonableness

The last requirement is that the exercise of jurisdiction over a defendant be fair and reasonable. Id. at 263. Since Korngold did not make a prima facia case showing as to either relatedness or purposeful availment, we need not reach the relatedness analysis. See id

## III.   CONCLUSION

For the foregoing reasons, Defendants Williams and Darrah's motion to dismiss [Dkt. 14] is **GRANTED**.

11

**SO ORDERED.**

Dated: March 10, 2023

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge